DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### MARCH TERM, 1870.

---

JOHN HARTMAN, PLAINTIFF IN ERROR, v. REBECCA L. ALDEN, EXECUTRIX, &c., DEFENDANT IN ERROR.

1. On *scire facias* to revive a judgment and plea of payment, if the evidence in support of the plea is clearly insufficient to justify a verdict for the defendant, it is the duty of the judge who presides at the trial to direct a verdict for the plaintiff.

2. But it is error to do this where the evidence is such that a verdict rendered thereon would not be set aside, either on the ground that there was not evidence enough to sustain it, or that it was clearly against the weight of evidence.

Error to the Circuit Court of the county of Essex.

On the 23d of February, 1857, Joseph L. Alden recovered a judgment against John Hartman, in the Circuit Court of the county of Essex, for $499.90 damages, besides costs. Joseph L. Alden afterwards died, and his widow, as executrix, sued out a *scire facias* to revive the judgment and to recover the amount due thereon, alleging the same to be unsatisfied.

The defendant, Hartman, pleaded to the *scire facias* that the judgment had been paid and satisfied to the said Alden, in his lifetime.

The case was tried at the Essex Circuit in the term of , 1868. The plaintiff in *scire facias* offered in evidence the record of the judgment. The defendant offered proof to show that the judgment was paid. After hearing the evidence, the court instructed the jury that there was no proof of payment offered by the defendant, which ought to be submitted to them, and that their verdict should be for the plaintiff.

To this direction the defendant excepted, and prayed a bill of exception, which was allowed and sealed accordingly.

The verdict of the jury was for the plaintiff, and this writ of error was brought to remove the judgment rendered upon it.

The evidence given on the trial, so far as necessary to a proper understanding of the question raised by the exception, is fully detailed in the opinion of the court.

The case was argued by—

*A. Q. Keasbey,* for the plaintiff in error.

*T. Runyon,* for the defendant.

WOODHULL, J.    This writ of error brings up a judgment rendered in the Circuit Court of the county of Essex on a *scire facias,* to revive a judgment recovered in that court on the 23d day of February, 1857, by Joseph L. Alden, the testator of the defendant in error, against the plaintiff in error, for the sum of $499.90 damages, and $27.15 costs.

The defence set up below was, that the judgment sought to be revived had been paid by John Hartman, the defendant below, to Joseph L. Alden, in his lifetime.

At the trial, the defendant below not being able to produce any direct evidence in support of his plea of payment, called and examined several witnesses for the purpose of

proving certain facts and circumstances, from which, as he insisted, the fact of payment might be fairly inferred.

The court, however, not being satisfied that the proof offered was such as ought to be submitted to the jury, instructed them to render a verdict for the plaintiff; and in so doing it is said that the court erred.

If the evidence offered by the defendant was clearly insufficient to justify a verdict in his favor on the plea of payment, there can be no doubt that it was the duty of the judge who presided at the trial so to instruct the jury, and to direct them, as he did, to render a verdict for the plaintiff.

The facts disclosed by the testimony in the cause may be briefly stated as follows:

Joseph L Alden recovered the judgment in question against John Hartman on the 23d day of February, 1857, on which execution was issued immediately, returnable April 28th, 1857, and duly returned, with levy and inventory on real estate sufficient to satisfy the judgment.

On the 27th day of April, 1857, the defendant, Hartman, sold to Charles How a lot of land on which the plaintiff's judgment must have been a lien, and took from him a bond and mortgage for $500, part of the purchase money.

This bond and mortgage came, at least as early as April 29th, 1858, and without any assignment, into the possession of Joseph L. Alden, who on that day received from an agent of Charles How one year's interest then due, and endorsed a receipt for the same on the bond.

At some time between April 29th, 1858, and July 26th, 1859, How sold his lot to John Flinger, subject to the Hartman mortgage, then in the hands of Joseph L. Alden, to whom, on the day last named, Flinger paid the principal of the bond and mortgage, Alden at the same time giving, over his own signature, an acknowledgment written on the mortgage that the same was satisfied in full.

Alden, who was a lumber dealer, began to sell to Hartman, who was a carpenter and builder, as early as 1853, the

first account between them being closed by the judgment on which this suit was brought.

On the 25th day of May, 1857, a little more than three months after that judgment was recovered, Alden opened a new account with Hartman, and sold him other lumber to the amount of between $500 and $600, which, except a trifling balance, was afterwards paid by Hartman.

In the fall of 1857 Alden became involved in financial difficulties, and so continued until his death, in 1864.

A witness, who was Mr. Alden's book-keeper from 1855 to 1860, testified that after 1858 he never heard Mr. Alden say anything of money being due to him on any judgment against Hartman.

These being the material facts in the case, should they not have been submitted to the consideration of the jury?

If they had been so submitted, and a verdict rendered for the defendant, could that verdict have been set aside as being unsupported by the evidence, or as against the weight of evidence?

The answer to this question furnishes the true test of the correctness of the ruling in the court below. *Holt* v. *Gilman,* 8 *Mass.* 336; 1 *Gra. & Wat. on New Trials* 280.

Without intending to express any opinion as to what verdict the jury ought to have rendered on the evidence, if they had been permitted to pass upon it, we think it quite clear that the case was a proper one to go to the jury.

The embarrassed circumstances of Mr. Alden from 1858 to his death in 1864; the fact that the judgment in question was a lien on property amply sufficient to satisfy it; that it might have been collected at any time, and yet that through all those years no attempt at all was made to collect it—these considerations alone might well suggest a doubt whether the judgment had not been already paid.

Other circumstances in the case a jury might reasonably interpret as indicating not only the fact of payment, but when and how the payment was effected.

Finding in the hands of Alden, some time after the date

of his judgment, a bond and mortgage unassigned and apparently belonging to Hartman, of about the same amount as the judgment, they would naturally inquire when and for what purpose these securities were handed over to Alden.

Observing that Hartman, about two months after the Alden judgment, sold to How a lot subject to the lien of that judgment, and considering that How would not be likely to deliver to Hartman a mortgage for the purchase money without some indemnity against the judgment, a jury might perhaps not unreasonably conclude that the mortgage in question, by an arrangement between the several parties interested, instead of being delivered directly to Hartman, was placed at once in the hands of Alden, for the double purpose of securing How and ultimately of paying off the judgment.

The fact that within a month after the sale of How, a new account was opened with Hartman in Alden's books, would seem to give some additional countenance to the supposition, that the judgment had already been in some way provided for.

Adding to this the fact that the interest on Hartman's bond and mortgage was paid by How to Alden, who afterwards received from How's grantee the principal in full, we cannot say that, if this case had gone to the jury and they had found for the defendant, that the verdict could properly have been set aside, either on the ground that there was not evidence enough to sustain it, or that it was clearly against the weight of evidence.

We are, therefore, of the opinion that the court below erred in withdrawing this case from the jury.

Another exception to the ruling of the court below, urged on the argument here, was, that the defendant, having first called the plaintiff's executrix, who was sworn as a witness on his part, offered himself, but being objected to by the plaintiff, was excluded by the court.

No bill of exceptions having been sealed upon this ground, we are not bound to notice it.

But as the question raised on the argument involves the

construction of the supplement to the act concerning witnesses, approved March 27th, 1866, we deem it proper, for the convenience of the bar, to say that we see no reason to doubt, that the construction of this act adopted by the Chancellor in *Shepherd's Executrix* v. *McClain & Murray*, 3 C. E. Green 129, is the true one, and that the ruling of the court below on this point was right.

The judgment of the Circuit Court must be reversed.

*For reversal*—THE CHIEF JUSTICE, BEDLE, CLEMENT, DALRIMPLE, KENNEDY, OGDEN, OLDEN, SCUDDER, VAN SYCKEL, WOODHULL. 10.

*For affirmance*—None.

CITED *in Walker* v. *Hill's Ex'rs*, 7 C. E. Gr. 516; *Wycoff* v. *Combs*, 1 *Stew*. 42.